STATE OF IOWA, Appellant, v. J. N. GHRIST, Appellee.

No. 43538.

December 15, 1936.

Opinion Modified and Rehearing Denied April 9, 1937.

Edward L. O'Connor, Attorney General, Walter F. Maley, Asst. Attorney General, Frank H. Lounsberry, County Attorney, and Stephens & Wisdom, for appellant.

Marion R. Hirschburg, for appellee.

RICHARDS, J.—Information was filed charging defendant with violating section 4410, Code 1935, which reads:

"4410. Attendance requirement. Any person having control of any child over seven and under sixteen years of age, in proper physical and mental condition to attend school, shall cause said child to attend some public or private school for at least twenty-four consecutive school weeks in each school year, commencing with the first week of school after the first day of September, unless the board of school directors shall determine upon a later date, which date shall not be later than the first Monday in December.

"The board may, by resolution, require attendance for the entire time when the schools are in session in any school year.

"In lieu of such attendance such child may attend upon equivalent instruction by a competent teacher elsewhere than at school."

Section 4411 is as follows:

"4411. Exceptions. Section 4410 shall not apply to any child:

"1. Who is over the age of fourteen and is regularly employed.

"2. Whose educational qualifications are equal to those of pupils who have completed the eighth grade.

"3. Who is excused for sufficient reason by any court of record or judge.

"4. While attending religious services or receiving religious instructions."

Upon the trial the following testimony was uncontroverted: Defendant, a resident of the Ames Independent School District had control of his son, whose age was 14 years at the time of the trial. This child entered the kindergarten of the Ames public schools in September, 1926. In September, 1927, he entered the first grade of said public schools where he remained continuously for three school years. In September, 1930, he entered the second grade, remaining there one year. Entering the third grade in September, 1931, and his school work being not satisfactory, he dropped out in February, 1932, and entered a parochial school where he was a pupil until he returned to the public schools of Ames in September, 1934, entering then the fifth grade. During the school year commencing in September, 1934, he failed to maintain the required standard of scholarship. Thereafter in the summer of 1935, the school board determined that the child should attend, beginning in September, 1935, what is known as the Franklin School. Defendant refused to cause the child to attend the Franklin School and demanded that the child continue as a student in the same grade school that he had been attending. The board refused to permit the child so to do and made it known that the Franklin School was the only school of the Ames Independent School District at which the child could attend. The trial court adjudged defendant not guilty. The State has appealed.

As one reason for the judgment, the trial court held that the legislature had not conferred on this school board the power to establish the Franklin School. This holding appellant assigns as error. Facts pertaining to this alleged error are these: About 12 years previously the Franklin School had been established by the school board as a part of the Ames public schools. There was an attendance of between sixteen and twenty pupils. The school was originally housed in one of the large grade school buildings but had been removed to a separate frame structure built originally for residential purposes. In the Franklin School all subjects required by statute were taught and in addition there was work in industrial arts, wood work, sewing, cooking and a little gardening. The distinguishing feature of the school lay in the fact that it was not graded. That is, instead of the

pupils being grouped in classes and required as members of such classes to accomplish a fixed amount of study with a prescribed degree of efficiency during a certain period of time, the school work required of each pupil in the Franklin School was determined on an individual basis, and was dependent on the proficiency of the child, each being permitted to go forward in his studies as rapidly as he might be able. One purpose of the Franklin School was to afford education to children who had difficulty in doing the work as required in the classes of the regular grades. Such difficulty was often because of mental handicaps, sometimes because of defects that are physical, such as defects of speech. After attending the Franklin School for a period of time, some pupils were transferred back to the grades.

It was because the Franklin School differed from the remaining schools of the district in being an ungraded school, that the trial court held its establishment was unauthorized. Upon that question, Article IX of our present State Constitution placed the educational interests of the state, including common schools and other educational institutions, under the management of a constitutional board of education. Although by constitutional authority the legislature later abolished such board, yet while existent it was vested with a qualified power of legislation. One of the early laws enacted by this board, December 24, 1859, found in chapter 88 of the Revision of 1860, provided that each civil township then or thereafter organized in the several counties of the state should constitute a school district, and that in each sub-district there should be taught one or more schools for at least twenty-four consecutive weeks in each year excepting in certain contingencies. The then somewhat pioneer period of development of the state dictated the civil township as the instrumentality for providing educational opportunities. At the same time the board recognized that there were localities of concentrated population and enacted that cities or towns of not less than 300 inhabitants may be constituted as separate school districts. Such provision is found in chapter 172 of the Acts of the Ninth General Assembly amendatory of an earlier act, contemplating the same end. Naturally, increasing population made desirable in localities a more developed type of school, and there is found in section 2037 of the Revision of 1860 a provision that the duties of the district board of directors shall include the establishment of graded or union schools wherever

they may be necessary. Section 1726, Code 1873, provides that the board of directors "may establish graded or union schools wherever they may be necessary, * * *." Section 2835, McClain's Annotated Code of 1888, contains the same provision. In the Code of 1897, section 2776 provided that the board may establish graded or union schools. Section 4267, 1935 Code, provides "The board may establish graded and high schools." These statutes with respect to establishing graded schools are definitely permissive. Naturally the earlier statutes were so, as the ungraded sub-district school was the original and generally accepted conception of a public school, from which any change for improvement would start. But the changing to a graded school was permissive and in the language of the present Code it still so remains. Our attention has not been called to any mandatory legislation that graded schools be established, nor that all schools in the district be graded, if any. Though graded schools may have become quite generally adopted in towns and cities, the fact remains that the legislature has seen fit to leave unchanged the original character of its enactments. That fact compels the conclusion that it was not beyond the powers of the Ames Board of Directors to maintain in their district an ungraded school.

The trial court also made the following finding: "In view of the fact that, the school which the board ordered this pupil to attend, was a special one, separate and distinct from the general public school, in view of the other evidence as to its nature, and in view of the terms of the statute itself, I am of the opinion, and so hold, that the defendant did not violate this law when he refused to compel his son to attend the school in question." This finding appears to be assigned as error. The school district having had authority to maintain this ungraded school as one of the schools of the district, and it not being separate and distinct from the general public schools of the district, but a part thereof, there was error in a contrary holding.

The defendant was demanding that his child be permitted to continue to attend the graded school from which he had been transferred to the Franklin School. The trial court was of the opinion that from such fact it was necessary to find defendant not guilty. Although the trial court correctly held that this criminal statute should be strictly construed, yet the conclusion

just mentioned was not tenable in view of section 4227, Code 1935, which reads:

"4227. Number of schools—attendance—terms. The board of directors shall determine the number of schools to be taught, divide the corporation into such wards or other divisions for school purposes as may be proper, determine the particular school which each child shall attend, and designate the period each school shall be held beyond the time required by law."

Exercising the authority found in this section the board had designated the Franklin School for attendance by this child if defendant chose to select the public schools for his child's attendance. Defendant questions such interpretation of section 4227, claiming that this section authorizes the board to determine the school each child shall attend only by dividing the district into wards, the school to be attended being then determined by the ward in which the child may reside. We need not discuss whether such might have been the legislative meaning as expressed in the corresponding section 1725, Code of 1873, which provides that the board "shall determine where pupils may attend school, and for this purpose may divide their district into such sub-districts as may by them be deemed necessary; * * *" However that may have been, the revised manner of expression as found in the 1935 Code, section 4227, appears to indicate a legislative intent to extend a wider authority, and in this case authorizing the board to designate the Franklin School for attendance by defendant's child irrespective of the division of the district into school wards.

The assigning of defendant's child to the Franklin School does not appear to be amenable to attack on the ground that it was an unreasonable exercise of authority. There was evident inability on the part of the child to meet the standards of the graded schools. It is in the record that he was an unfortunate victim of infantile paralysis, and that he suffers continually from pain. True, the child is sensitive and it was the fear of defendant that, being compelled to attend the Franklin School the child might become embittered against attending any school on account of the fact that children in the graded schools were inclined to refer to the Franklin School as the "dumb school" and to treat discourteously the pupils there attending. Defendant also made objection to the Franklin School because it was

housed in a two story frame building inferior to the grade school buildings, without fire escapes and having equipment inferior to that used in the grade schools. Explanations concerning these complaints are in the evidence and need not be recounted except to say these matters when explained are not of serious moment. From the entire record there does not appear unreasonableness such as would warrant holding that the board exceeded the authority intended to be granted to school boards to determine where pupils may attend school.

The trial court seems to have looked upon the information as charging that defendant committed an offense because he had refused to permit the child to attend the particular school designated by the school board. The information was so inaptly drawn that the court's attitude had some foundation. But we hold that the information was sufficient to charge violation of section 4410, Code 1935, as modified by section 4411, and have looked upon the issue as being based on the fact that defendant failed to cause the child to attend either the Franklin School or some private school or to attend private instruction, alternatives that appear to have been open to defendant.

No claim is made that the child was not in proper physical and mental condition to attend school, nor that the child had been excused from school attendance for sufficient reason by a court of record or judge. While there is here an unhappy and unfortunate situation, yet the uncontroverted facts presented and the provisions the legislature has made left no room for an acquittal. This conclusion of course does not subject defendant to further prosecution upon the information.—Reversed.

PARSONS, C. J., and STIGER, HAMILTON, DONEGAN, KINTZINGER, ANDERSON, and ALBERT, JJ., concur.